1
2
3
4
5

**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (AZ Bar No. 030204)
Christopher J. Bendau (AZ Bar No. 032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
          chris@bendaulaw.com
*Attorneys for Plaintiffs*

6
7
8
9
10

**SPENCER FANE LLP**
Helen R. Holden (AZ Bar No. 013264)
2415 E. Camelback Rd, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5450
Fax: (602) 3335431
E-mail: hholden@spencerfane.com
*Attorneys for Defendants*

11

UNITED STATES DISTRICT COURT

12

DISTRICT OF ARIZONA

13
14
15
16
17
18
19

| | |
|---|---|
| **Valerie Valle**, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>**B & R LYLES Enterprises, LLC d/b/a Bikini Beans,** et al,<br><br>                    Defendants. | No. 2:20-CV-01513-DWL<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT** |

20
21
22
23
24
25
26
27

Plaintiffs Valerie Valle and Keely Siegel, individually and on behalf of all others similarly situated ("Plaintiffs and Class Members") and Defendants B&R Lyles Enterprises, LLC, BB Peoria LLC, BB Phoenix, LLC, BB Tempe, LLC, Mesa BB, LLC, Peoria Beans, LLC, and Benjamin Lyles and Regina Lyles ("Defendants" or "Bikini Beans") (Collectively, "Parties") file this Joint Motion for Preliminary Approval of Class Action and FLSA Collective Action Settlement.  The Parties Respectfully move this Court to preliminarily certify the Rule 23 Class identified herein for the purpose or

settlement, approve the Settlement and Release Agreement ("Agreement") between the Parties, and set a fairness hearing to address the same.  The Parties further move this Court to approve the Agreement as to the FLSA collective action.  A copy of the Agreement is attached hereto as "**Exhibit A**."

## I.  INTRODUCTION

This is a proposed collective and class action lawsuit for unpaid minimum and overtime wages brought by Plaintiffs Valerie Valle and Keely Siegel on behalf of themselves and all other similarly situated current and former baristas and managers who claim they were not properly compensated minimum or overtime wages–specifically due to improper tip credit notice, improper withholding of tips, improper required reimbursements, improper deductions from paychecks, and improper off the clock work. Plaintiffs have alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201., et seq. to recover their unpaid minimum wage and overtime compensation and statutorily prescribed penalties.  In addition to their claims under the FLSA, Plaintiffs further alleged state law claims for Plaintiffs and Class Members. Defendants contend that all employees were appropriately compensated at all times, but have nonetheless agreed to resolve this matter.

The parties have negotiated an Agreement that will resolve the claims of the Named Plaintiffs, the Opt-in Plaintiffs, the Putative Class Members, and the Manager Plaintiffs[1].  For settlement purposes only, the Parties are seeking certification of a settlement class pursuant to FRCP 23.  Specifically, Plaintiffs seek preliminary approval of a settlement class resolving their federal claims and Arizona state law claims, pursuant

---

[1]      The Complaint in this matter included a separate class of managers who were alleged to be subject to the same policies as the Barista class members, but due to the small number of class members for the manager class, the parties opted to settle the manager claims for the individual managers who had already opted-in to the lawsuit at the time of the mediation.  The settlement for the Manager Plaintiffs is included as part of the parties' overall settlement, and the specific amount is noted separately below.

to the Arizona Minimum Wage Act ("AMWA"), Arizona Revised Statutes ("A.R.S.") § 23-362, et seq.

The total amount that Defendants will pay pursuant to the Agreement is $150,000.00 (the "Settlement Amount") inclusive of attorneys' fees, costs, and service awards for the Named Plaintiffs.  In addition to the Settlement Amount, the Parties will equally share the costs of settlement administration, up to $5,000.00 each, and Defendants will separately pay the employer portion of payroll taxes.  *See* Ex. A.  The settlement of this matter was reached after mediating this matter before Tod Schleier, and the Parties believe the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval under binding Ninth Circuit Precedent.

## II.    ISSUES PRESENTED

By this Joint Motion, the Parties ask the Court to (1) certify the proposed settlement class pursuant to Rule 23(3) of the Federal Rules of Civil Procedure in connection with the settlement process; (2) appoint Valerie Valle and Keely Siegel as Class Representatives for the Proposed Settlement Class for settlement purposes; (3) approve the Parties' proposed Notice of Class and Collective Action Settlement and Notice to Opt-In Plaintiffs of Collective Action Settlement, attached as **"Exhibit B"**; (4) set a date by which the Parties must file a motion for final settlement approval and petition for an award of attorneys' fees and costs; (5) schedule the Fairness hearing; and (6) approve the FLSA collective action settlement.

## III.   SUMMARY OF FACTS AND PROCEDURAL HISTORY

Bikini Beans is a chain of drive thru coffee shops located throughout the metro Phoenix area.  Plaintiffs Valerie Valle and Keely Siegel originally filed this hybrid collective/class action lawsuit on July 30, 2020 in the District of Arizona on behalf of themselves and on behalf of all current and former baristas and managers employed by Bikini Beans from July 30, 2017 through the present.  Doc. 1.  Plaintiffs contend that

-3-

Bikini Beans failed to give adequate tip credit notice, improperly withheld tips, made improper deductions from wages, and required off the clock work resulting in unpaid minimum wages and overtime wages for the baristas and the manager classes. *Id*. Defendants filed a Motion to Dismiss on September 29, 2020 (Doc. 24), and Plaintiffs filed their First Amended Complaint on October 13, 2020, removing some claims and adding additional entity Defendants. Doc. 26. Defendants deny any liability to Plaintiffs and the putative Class or Collective Members for any unpaid minimum wages or overtime wages and allege that Plaintiffs and the putative Class and Collective Members were fully and properly compensated under federal and state law.

Since the filing of the lawsuit, 21 additional individuals have filed consent forms to join. The Parties sought, and were granted, a stay of the action while the parties discussed settlement and ultimately agreed to mediate the matter in good faith. Docs. 38, 40. The Parties initially mediated the matter with Tod Schleier on March 18, 2021, and then had a second mediation on April 26, 2021, where the Parties reached a settlement. Due to the small number of current and former managers of Bikini Beans, several of whom had already opted into the lawsuit, the Parties agreed that the settlement class would only consist of the 139 current and former baristas. The managers who had already opted into the lawsuit would be included in the settlement, but only for their individual claims, and no other managers would receive notice or be included in the settlement unless any such manager also worked as a barista for Bikini Beans. The Parties filed their notice of settlement on May 7, 2021.

## IV.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Settlement Fund

The Parties have agreed to settle this matter for the total gross settlement amount of $150,000.00. Included in that amount is Class Counsel's attorneys' fees of $50,000.00, out of pocket costs of $4,275.00, up to $5,000.00 for Plaintiffs share of the

PH 1022305.1

settlement administration costs, $4,000.00 in service awards to the two named Plaintiffs, and $10,000.00 in settlement amounts to the four managers who opted into the lawsuit. As previously noted, Defendants will separately pay their share of the settlement administration costs, up to $5,000.00, and will separately pay the employer share of payroll taxes.  The remaining $76,725.00 consists of two settlement funds: (1) a Class settlement fund of $27,800.00, which will be paid out equally to all class members who do not opt out; and (2) a Collective settlement fund of $48,925.00, which will be paid out on a pro-rata basis to all Collective members who opt-in to the lawsuit based on the number of hours worked.  Class Counsel estimates that approximately sixty percent (60%) of the gross settlement amount will be payable directly to the Plaintiffs and the Class and Collective Members.

**B.**    **Individuals Included in the Settlement and Release**

The proposed settlement includes the follow individuals and groups:

a.    "Named Plaintiffs" Valerie Valle and Keely Siegel;

b.    "Class Members" means all 139 baristas who worked as tipped employees of Defendants between July 30, 2017 and July 30, 2020 ("Class Period");

c.    "Collective Members" means Class Members who have previously submitted opt-in notices in the litigation plus any additional Class Members who timely submit a Claim Form and Consent to Join to the Claims Administrator;

d.    "Manager Plaintiffs" means Valerie Valle, Alicia Gates, Soraya Sanchez, and Allyson Barela.

Ex. A, at p. 3

**C.**    **Allocation of Payments**

After calculating the net settlement fund (the amount remaining in the settlement fund after deducting attorneys' fees, costs, administration costs, service awards, and manager settlement payments, the remaining settlement funds will be distributed as follows:

-5-

    a.      Manager Plaintiffs - $10,000.00, allocated as follows:

             i. Valerie Valle - $3,000.00

             ii. Alicia Gates - $3,000.00

             iii. Soraya Sanchez - $3,000.00

             iv. Allyson Barela - $1,000.00

    b.      Class Members - $27,800.00, paid out as $200.00 each to each class member who has not opted out of the Litigation by submitting a Request for Exclusion.

    c.      Collective Members - $48,925.00, paid out to Collective Members on a pro rata basis based on the hours worked in each year during the Class Period.

Unless otherwise stated in the agreement, fifty percent (50%) of the funds distributed to Collective Members, and 67% of the funds distributed to Class Members, shall be treated as liquidated damages and will not have taxes withheld from such payments.  The remaining percentages of the funds distributed to Collective Members and Class Members will be treated as back wages and will accordingly be subject to W-2 reporting.  Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount.[2]  Ex. A, at p. 9.

### D.   Release of Claims

Each Class Member will receive a Notice of Settlement which will include a statement identifying the claims subject to the agreement and indicating that failing to opt-out of the settlement will release Defendants from any and all claims arising under the Arizona Minimum Wage Act, A.R.S. § 23-362 et seq.  In the event a Class Member fails to opt-out of the settlement, he or she will release claims arising under the Arizona Minimum Wage Act, A.R.S. § 23-362 et seq., as alleged the Complaint, including

---

[2]    Employer portions of all such payroll taxes and withholdings will be paid separately by Defendants.

PH 1022305.1

without limitation, any claims or causes of action which accrued from July 30, 2017 through the date that preliminary approval of this agreement is granted.  All Class Members who have opted-in to this lawsuit or who returns a claim form ("Collective Members") will also release their claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.  Further, the Named Plaintiffs, Valerie Valle and Keely Siegel, provide a general release against Defendants in exchange for the service awards they are receiving under the Settlement Agreement.

### E.    Attorneys' Fees and Litigation Costs

Consistent with the agreement entered into between Plaintiffs and Plaintiffs' counsel, Plaintiffs' Counsel respectfully request an award of attorneys' fees in the amount $50,000.00, plus reimbursement of their to date actual out-of-pocket litigation costs of $4,275.00, plus up to $5,000.00 for Plaintiffs' portion of the settlement administration costs.  Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will file a motion for approval of their attorneys' fees and costs concurrently with the motion for final settlement approval.

### F.    Class Representatives and Service Awards

The Parties request that Named Plaintiffs, Valerie Valle and Keely Siegel be appointed as the Class Representatives for the Settlement Class.  As part of the Agreement, the Parties have agreed to service awards of $3,000.00 for Valerie Valle and $1,000.00 for Keely Siegel, for a total of $4,000.00 in service awards.  In light of their efforts that resulted in a settlement on behalf of the Named Plaintiffs, the Class Members, the Collective Members, and the Manager Plaintiffs, and the significant risk to their reputations and future employment, these modest awards are reasonable.

### G.    Settlement Administration

The Parties have elected to retain Optime Administration, a third-party settlement administrator ("Administrator") to administer the settlement.  Under the terms of the

PH 1022305.1

Agreement, the administration costs and expenses incurred by the Administrator are split between Plaintiffs and Defendants equally, up to $5,000.00 each, and Plaintiffs' portion of is payable out of the gross settlement fund.

Within ten (10) days of the Court granting this Motion, Defendants will provide the Administrator with the (1) name; (2) social security number; (3) last known address; (4) dates of employment; and (5) hours worked within the class period, broken out by year.  Within five (5) days of receipt of this information, the Administrator will be responsible for mailing to Class Members the Court-approved Notice of Settlement of Class Action Lawsuit and Fairness Hearing.  Following the Court's Final Approval Order approving the Settlement, Administrator will be responsible for calculating and making all necessary withholdings from W-2 payments, distributing all settlement checks to all Named Plaintiffs, Manager Plaintiffs, Class Members, and Collective Members, sending payment to Plaintiffs' counsel for all attorneys' fees and costs, and following up on any and all payments returned by the postal service as undeliverable to identify and locate class members and distribute the settlement proceeds.

## V.   ARGUMENT AND AUTHORITIES

### A.   Settlement Procedure

"The approval of a class action settlement pursuant to Rule 23 takes place in two stages.  First, the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class.  *Howard v. Web.com Group Incorporated*, 2020 WL 3827730, at *3 (D. Ariz. July 8, 2020).  For preliminary approval, the Court only needs to determine whether the settlement is within the range of possible approval.  *See Id.*; *see also Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010).  "The court is really only concerned with 'whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or

-8-

excessive compensation of attorneys….'" *Howard*, at *3 (quoting *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010). After preliminary approval of the settlement, the class is given notice of a formal Rule 23(e) fairness hearing, where the Court will consider class members' objections to the treatment of the action as a class action and/or the terms of a settlement agreement, before making a final determination on the settlement. *See Howard*, at *3.

Courts must also undertake an inquiry similar to that required for Rule 23 class actions prior to approving the settlement of an FLSA collective action. *See Howard*, at *3. However, the requirements for FLSA approval are less stringent because only parties who affirmatively opt-in to the settlement are bound by its terms. *See id*. Courts within the Ninth Circuit typically apply the Eleventh Circuit standard set in *Lynn's Food Stores, Inc.*, which requires that the settlement constitute a fair and reasonable resolution over a bona fide dispute over FLSA provisions. *See Id*.

### B.   Class Action Certification

"Before a court may evaluate a class action settlement under Rule 23(e), the settlement class must meet the requirements of Rules 23(a) and (b)." *Howard*, at *3. Under Rule 23(a), the four criteria for class action certification are (1) numerosity; (2) commonality of law or fact; (3) typicality of the representative plaintiff's claims; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). After the requirements for Rule 23(a) are satisfied, the court must evaluate the predominance and superiority requirements of Rule 23(b) before evaluating whether the settlement is "fair, reasonable, and adequate." *Howard,* at *3; Fed. R. Civ. P. 23(e).

### 1.   The Numerosity Requirement is Met

A member of a class may sue on behalf of all members of the class where the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Joinder of all class members must only be difficult or inconvenient to satisfy Rule

PH 1022305.1

23(a)(1).  *See Howard*, at *4 (citing *Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 594 (E.D. Cal. 2008).  While numerosity requires "examination of the specific facts of each case and imposes on absolute limitations" courts have routinely found that 40 or more class members satisfies the numerosity requirement.  *See Howard*, at *5; *see also Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal 2011).  Here, there are 139 total class members.  Ex. A, at p. 3.  Therefore, the numerosity requirement is satisfied.

## 2.   The Commonality Requirement is Met

Commonality requires questions of fact and law which are common to the class. Fed. R. Civ. P. 23(a)(2).  "[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are 'apt to drive the resolution of the litigation,' no matter their number."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 962 (9th Cir. 2013). "All questions of fact and law need not be common; rather, the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *3 (C.D. Cal. April 27, 2015).  "In the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice.  *Howard*, at *4.

Here, Plaintiffs allege that Defendants had a company-wide policy of deducting training costs from the class members' final paychecks, improperly withholding class members' tips due to late arrivals and register shortages, requiring class members to purchase uniforms, and failing to provide proper tip credit notice to class members.  Doc. 26, at pp.  Because the success of the Class Members' claims turns on the same common questions of law and fact, the commonality requirement is satisfied.

-10-

PH 1022305.1

### 3. The Typicality Requirement is Met

Typicality requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  "Typicality requires that class representatives 'possess the same interest and suffer the same injury' as the putative class."  *Howard*, at *5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).  Representative claims do not need to be substantively identical, but merely co-extensive with the class members' claims.  *See Howard*, at *5.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, ad whether other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

Here, Plaintiffs and the Class Members have all suffered the same injury– Defendants failure to compensate Plaintiffs and the Class Members for time worked pursuant to their company-wide policies of deducting training costs from the class members' final paychecks, improperly withholding class members' tips due to late arrivals and register shortages, requiring class members to purchase uniforms, and failing to provide proper tip credit notice to class members in violation of Arizona state wage laws.  Therefore, Plaintiffs and the Class Members meet Rule 23(a)(3)'s typicality requirement.

### 4. The Adequacy Requirement is Met

Named Plaintiffs and Plaintiffs' counsel are adequate representatives and "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement looks to whether (1) the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) the named plaintiffs and their counsel prosecuted the action vigorously on behalf of the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Class representatives "must be part of the

-11-

1   class and 'possess the same interest and suffer the same innjury' as the class members."

2   *Anchem Products, Inc., v. Windsor*, 521 U.S. 591, 625-26 (1997) (quoting *East Tex.*

3   *Motor Freight System, Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977).

4        Named Plaintiffs Valerie Valle and Keely Siegel are both members of the

5   proposed class.  Doc. 26, at ¶¶ 28, 32.  Both individuals were subject to Defendants'

6   policies and share a common interest with the class in recovering their unpaid wages.

7   Further, Plaintiffs' counsel are experienced in wage and hour litigation, as well as class

8   and collective action litigation, and are fully able to conduct this litigation on behalf of

9   the proposed class.  *See* Declaration of Christopher J. Bendau, attached hereto as

10  "**Exhibit C**."  Named Plaintiffs and plaintiffs' counsel have vigorously prosecuted this

11  case and understand their responsibilities to the class.

12        **5.      Predominance and Superiority**

13        Rule 23(b)(3)'s predominance requirement is met because common questions

14  present a significant aspect of the case and are able to be resolved for all class members

15  in a single action.  *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 663 (E.D. Cal. 2008).

16  While company employment policies are not a guarantee of predominance, corporate

17  policies bear heavily on the questions of predominance and superiority, and

18  predominance is rarely defeated where liability arises from an employer's common

19  practice or policy.  *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 938

20  (9th Cir. 2019).  Here, the Class Members share a common set of core, predominate facts

21  and legal issues, namely that the Class Members were all employed by Defendants as

22  baristas; they were all compensated an hourly rate plus tips; the injuries suffered by the

23  class members are largely identical and stem from Defendants' employment policies; and

24  the determination of whether Defendants' policies violated state law will resolve the bulk

25  of the inquiry before the Court.  Because the claims resolved through this settlement stem

26  from Defendants' employment policies and applied equally to all class members, the

27

-12-

1    predominance requirement is satisfied.

2          The superiority factors weigh in favor of certification.  Courts consider four

3    factors in addressing superiority: (1) the interests of the members of the class in

4    individually controlling the prosecution of separate actions; (2) the extent and nature of

5    other pending litigation about the controversy by members of the class; (3) the

6    desirability of concentrating the litigation in a particular forum; and (4) the difficulties

7    likely to be encountered in management of the class action.  Fed. R. Civ. P. 23(b)(3).

8          Here, nothing suggests that there is any interest among the class members in

9    pursuing their claims individually.  In fact, a total of twenty-one (21) class members,

10   more than 15% of the total class, opted into the lawsuit despite no notice having been

11   sent out yet, indicating that the class members would prefer to pursue their claims

12   collectively.  Docs. 6, 10, 12, 21, 25.  Further, Plaintiffs are not aware of any other

13   pending litigation about this controversy.  Concentrating the litigation in this forum is

14   desirable because it is both the district where the Defendants are headquartered and the

15   district where the claims arose.  Finally, because the parties have reached a settlement

16   and seek certification only for purposes of settlement, the Court does not need to consider

17   the difficulties likely to be encountered in management of the class action.  *See Howard*

18   *v. Web.com Group Incorporated*, 2020 WL 3827730, at *6.

19         Because Plaintiffs have satisfied Rule 23's requirements for certification, the

20   Court should certify the proposed class for settlement purposes.

21   **C.      The Court Should Preliminarily Approve the Class Action Settlement**

22         Courts recognize "a strong judicial policy that favors settlement, particularly

23   where complex class action litigation is concerned."  *In re Syncor ERISA Litigation*, 516

24   F.3d 1095, 1101 (9th Cir. 2008).  The Federal Rules requires that the district court

25   approve any settlement of a certified class before such settlement becomes final.  *See*

26   Fed. R. Civ. P. 23(e).  Courts must determine whether a proposed settlement is

27

                                      -13-

1    "fundamentally fair, adequate, and reasonable." *Howard*, at *8.  At the preliminary

2    approval stage, courts tend to consider only whether the proposed settlement "(1) appears

3    to be the product of serious, informed, non-collusive negotiations; (2) has obvious

4    deficiencies; (3) improperly grants preferential treatment to class representatives or

5    segments of the class; and (4) falls within the range of possible approval." *Howard*, at *8

6    (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal

7    quotations omitted).

### 1.    The Settlement was a Product of Serious, Informed, Non-Collusive Negotiations

This matter was resolved only after the Parties engaged in two private mediations.
The parties in this matter were represented in the negotiations by counsel experienced in
wage and hour litigation.  Both mediations were conducted fairly and at arm's length
with the assistance of Tod Schleier, a well-respected mediator experienced with both
wage and hour disputes and class and collective action litigation.  Both of these facts
support that this settlement is fair.  *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226
(S.D. Ill 2001) (citing that a settlement proposal reached after arms-length negotiation
with experienced, informed counsel may be properly presumed fair and reasonable.); *see
also Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio October 23, 2008)
("The participation of an independent mediator in settlement negotiations virtually
insures that the negotiations were conducted at arm's length and without collusion
between the parties.").  Prior to engaging in the mediations, the Parties exchanged and
reviewed documents and prepared mediation statements, along with supplemental
statements, which were provided to Mr. Schleier to review in advance of the mediations.
All parties involved believe that the settlement represents a fair and reasonable
compromise of contested litigation reached through arms-length negotiations.

### 2.    There are No Deficiencies in the Settlement

The Parties' settlement does not contain any deficiencies.  The Agreement clearly

-14-

delineates separate settlement funds for the class settlement and the collective settlement. The Agreement also provides a defined amount to settle the few manager claims involved in this case.  The Settlement provides notice to the class members that complies with Rule 23(C)(2)(B).  The class members will receive the settlement notice via regular mail. The notice will include a one-page claim form that will allow individuals to opt-in to the FLSA settlement, as well as clear instructions for how to opt-out of the class and how to object to the settlement.  The settlement provides a 60-day notice period during which the class members can exclude themselves or opt-in to the FLSA settlement.  The notice is being handled and administered by a third-party settlement administrator, Optime Administration, who will handle sending notice, receiving claim forms, following up on any returned mail, and ultimately sending out settlement checks after approval.  The Parties believe that the Settlement and notice procedure are free of deficiencies and should be approved by the Court.

### 3.     The Settlement Does Not Grant Preferential Treatment to the Class Representatives or any Segment of the Class.

The Settlement does not improperly grant preferential treatment to the Plaintiffs or any segment of the class.  The class members, including the Named Plaintiffs and Opt-in Plaintiffs, who do not opt out of the settlement will receive a flat $200 settlement payment in resolution of the state law claims.  Because all class members are entitled to the same amount of money through the class settlement fund, there were no sub-classes receiving different damages.  Further, each class member will have the opportunity to opt-in to the FSLA settlement, which will provide them with their pr rata share of the FLSA settlement fund based on their hours worked during the relevant time period.

Separate from their claims, Named Plaintiffs, through their counsel, request a small service award for their assistance in the prosecution of this case.  Named Plaintiff Valerie Valle worked for Defendants as both a barista and a manager, and was instrumental in providing information to Plaintiffs' counsel regarding the claims of both

-15-

baristas and managers.  Plaintiff Valle regularly made herself available to Plaintiffs'
counsel to answer questions and discuss the case.  She also acted as a disseminator of
information to the other opt-in class members.  Finally, Plaintiff Valle attended and
participated in both mediations where this case ultimately was resolved.  Plaintiff Keely
Siegel was also instrumental in providing information about the claims, making herself
available to answer questions and discuss the case, and disseminating information to the
opt-in members.  "Incentive awards are particularly appropriate in wage-and-hour actions
where plaintiffs undertake a significant 'reputational risk' by bringing suit against their
former employers." *Howard v. Web.com Group Incorporated*, 2020 WL 10223299, at *4
(D. Ariz.  September 18, 2020).

### 4. <u>The Settlement Falls Within the Range of Approval</u>

"To determine whether a settlement falls within the rate of possible approval, courts
focus on substantive fairness and adequacy and consider plaintiffs' expected recovery
balanced against the value of the settlement offer." *Howard*, 2020 WL 10223299 at *5
(internal citations omitted).  Under the Settlement, Class Members are eligible to receive a
payment of $200 to resolve the state law claims. Ex. A, at p. 7.

Plaintiffs allege in this lawsuit that, pursuant to company policy, that Defendants
withheld $300 from their final paychecks to reimburse themselves for training costs if they
failed to complete at least six (6) months of consecutive employment or otherwise
committed job abandonment.  Doc. 26, at pp. 25-26.  In addition, Plaintiffs allege that
throughout their employment Defendants made other deductions, or required cash
repayments, from paychecks and tips for various reasons.

Although Plaintiffs are confident in the strength of their case, Defendants dispute
Plaintiffs' factual assertions and have proffered multiple legal defenses.  Defendants argue
that few individuals actually had deductions made from their pay, and that the deductions
were permitted under Arizona State law and did not reduce Class Members' pay below the

PH 1022305.1

applicable minimum wage.   Gathering additional evidence through discovery and depositions would require hundreds of hours of attorney time and additional years of judicial resources.   Additionally, issues with records may make it more difficult to determine actual amounts held, and the Parties may be forced to rely on witness testimony. The parties would be required to brief both Collective certification and class certification, a motion for decertification of the collective, as well as dispositive motions on Plaintiff's claims and Defendants' defenses.   This case was filed nearly one year ago, and the parties have engaged in informal document exchange and review which allowed the parties to ascertain the potential range of recovery and negotiate in good faith and reach a settlement with the assistance of a mediator.   The settlement provides a gross sum of $150,000.00, which provides the Class Members with a recovery of 2/3 of the amount of training reimbursement/job abandonment fees that Defendants assessed against the Class Members. The District of Arizona has previously approved settlements that provided for a recovery of between 35% and 40% of unpaid wages.   *Howard v. Web.com Group Incorporated*, 2020 WL 10223299, at *5 (D. Ariz. September 18, 2020).

Continued litigation would be expensive and., given the legal and factual disputes, risky to maintain to both sides.   Balancing the costs and risks of litigating this matter through to trial versus the potential for little to no recovery for Plaintiffs and the Class Members, the Settlement represents a fair resolution of this matter.   Therefore, the Court should find that the Settlement is within the range of possible approval.

Based on the foregoing, the Court should find that all factors weigh in favor of approving the Settlement, and the Court should grant preliminary approval of the Settlement.

### 5.   The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Rule 23(g) provide that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g).   In appointing class counsel, the court must consider "(i) the work

-17-

PH 1022305.1

1   counsel has done in identifying or investigating potential claims in the action; (ii)

2   counsel's experience in handling class actions, other complex litigation, and the types of

3   claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

4   resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

5          Plaintiffs request that Plaintiffs' counsel, Bendau & Bendau PLLC, be appointed

6   as Class Counsel.  Plaintiffs' counsel has diligently litigated this action from the filing of

7   the complaint through to the settlement of this matter at mediation.  Plaintiffs' counsel

8   undertook thorough investigation and analysis of the facts and legal issues in this matter,

9   conducted an extensive review of documents, and ultimately negotiated a fair settlement

10  with Defendants with the assistance of a mediator.  Further, as detailed in Christopher J.

11  Bendau's declaration, Plaintiffs' counsel have extensive experience in wage and hour

12  litigation, including in the class and collective action context.  Ex. C.

13         **D.      The Court Should Approve the Parties' Proposed Notice and Notification Procedures**

14
15         Rule 23(c)(2)(B) provides that "the court must direct to class members the best

16  notice that is practicable under the circumstances, including individual notice to all

17  members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

18  The notice must provide "(i) the nature of the action; (ii) the definition of the class

19  certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an

20  appearance through an attorney if the member so desires; (v) that the court will exclude

21  from the class any member who requests exclusion; (vi) the time and manner for

22  requesting exclusion; and (vii) the binding effect of a class judgment on members under

23  Rule 23(c)(3).

24         The notice form, attached as "Exhibit B," explains the nature of the action and

25  Defendants' defenses to the action on page one.  *See* Ex. B, at p. 1.  The class definition

26  and a further explanation of the claims and defenses is provided on page two.  *Id*., at p.2.

27  The notice form advises class members that they can be represented by an attorney of

-18-

their choice.  *Id.*, at p. 5. ("DIRECT ALL INQUIRIES TO CLASS COUNSEL OR AN ATTORNEY OF YOUR CHOICE.").  The notice form states multiple times that class members can exclude themselves from the settlement, and provides instructions on how to do so, along with the deadline for doing so.  *Id.*, at p. 4.  Finally, the notice form provides that class members who exclude themselves will not be bound by the settlement and provides the specific release language for whether a class member chooses to only participate in the class settlement or chooses to opt-in to the FLSA settlement as well. *Id.*, at pp. 3-4.

The Parties' notice plan provides that within ten (10) days of the Court issuing a Preliminary Approval Order, Defendants shall transmit the class information to the Administrator, who will then mail out the notice to the Class Members within five (5) days of receipt of the class information.  Ex. A, at p. 6.  The notice period will last sixty (60) days, and during that time, the class members will have the opportunity to submit a claim form to join the FLSA collective, take no action and remain part of the state law class, or exclude themselves from the settlement altogether.  *Id.*, at p. 12; Ex. B, at pp. 2-3.  During that time, the Administrator will take reasonable steps to obtain the correct address for any Class Members for whom a Notice is returned by the Post Office.  Ex. A, at p. 6.  Plaintiff's Counsel shall provide to Defendants' Counsel a draft Joint Motion for Judgment and Final Approval ("Final Approval Motion") to Defendants' counsel no less than 21 days after the close of the opt-in period.  *Id.*  Defendants' Counsel shall have seven (7) days to review and revise the Final Approval Motion, and Plaintiff's Counsel shall file the Final Approval Motion at least 21 days before the Fairness Hearing.

Because the notice meets all of Rule 23(c)(2)(B)'s requirements, the Court should approve the notice.

**E.     The Court Should Approve the FLSA Settlement as Fair and Reasonable.**

"FLSA claims may not be settled without approval of either the Secretary of Labor

-19-

1   or a district court." *Semiano v. Xyris Enter., Inc*., 602 F. App'x 682, 683 (9th Cir. 2015)

2   (citing *Nall v. Mal-Motels, Inc*., 723 F.3d 1304, 1306 (11th Cir. 2013)).  "In reviewing an

3   FLSA settlement, the district court's obligation is not to act as caretaker but as

4   gatekeeper; rather, it must ensure that private FLSA settlements are appropriate given the

5   FLSA's purposes and that such settlements do not undermine the Act's purposes."

6   *Quintana v. HealthPlanOne LLC*, CV-18-02169-PHX-RM, 2019 WL 3342339, at *1 (D.

7   Ariz. July 25, 2019).  Courts within the Ninth Circuit generally apply the Eleventh

8   Circuit standard, which asks whether the settlement is "a fair and reasonable resolution of

9   a bona fide dispute over FLSA provisions."  *Nall*, 723 F.3d at 1308 n.3.  "If the

10  settlement reflects a reasonable compromise over issues such as FLSA coverage or

11  computation of back wages ..., the court may approve the settlement in order to promote

12  the policy of encouraging settlement of litigation."  *Juvera v. Salcido*, No. 11-2119, 2013

13  WL 6628039, at *8 (D. Ariz. Dec. 17, 2013) citing *Khanna v. Inter–Con Sec. Systems*,

14  *Inc*.,2012 WL 4465558, at *10 (E.D. Cal. Sept. 25, 2012).

15        **1.     The Proposed Settlement Is the Product of Contested Litigation
16                and Resolves a Bona Fide Dispute Between the Parties**

17             This matter has involved a lengthy Complaint (Doc. 1), a Motion to Dismiss (Doc.

18  24), Amended Complaint (Doc. 26), discussions of between counsel of various legal and

19  factual issues, informal exchange and analysis of relevant documents, and was ultimately

20  only settled after participating in two mediations with a neutral third-party mediator.  The

21  parties, both represented by experienced counsel, negotiated a settlement in an arms-

22  length negotiation —a mediation before a mediator experienced in wage and hour

23  disputes and class and collective action litigation, Tod Schleier, who worked with the

24  parties and assisted in negotiating a fair settlement. The facts of this case were disputed,

25  including whether Defendants were joint employers under applicable law, whether

26  Defendants gave Plaintiffs and the Class and Collective Members adequate tip credit

27  notice, whether deductions from Plaintiffs and Class and Collective Members were

-20-

PH 1022305.1

permitted under federal and state law, the amount and extent of any uniform/training cost deductions and whether such alleged deductions were permissible under applicable law, whether or not Plaintiffs and the Class and Collective Members were required to reimburse Defendants for cash register shortages, whether or not exclusion from daily tip pools violated state or federal law and the amount and extent of any such tips, and whether this action could properly be maintained as a class and/or collective action.

### 2. The Proposed Settlement is Fair and Reasonable

The Settlement provides for meaningful compensation that is well within the possible range of recovery.  The parties engaged in significant informal discovery to determine settlement values, the scope of the release is limited to an individual opt-in's wage and hour claims, and enlisted the assistance of an experienced wage and hour and class and collective action mediator to reach this Settlement.  Through the settlement, individuals who opt-in to the FLSA Collective Action Settlement will receive their pro rata share of the settlement fund based on the hours they worked.

Plaintiffs' counsel has significant experience in wage and hour litigation and believes the monetary terms of the Settlement are fair and reasonable.  Plaintiffs' Counsel accepted and litigated this action on a contingency basis, agreeing to receive either 40% of the overall recovery or Plaintiff's counsels' separately negotiated lodestar fees, whichever was greater, and have received no compensation for the outlay of attorney time, nor for any of the expenses incurred.  *See* Representation Agreements, attached hereto as "**Exhibit D**."  Further, there has never been any guarantee that Plaintiffs' Counsel would ever be paid for that time or reimbursed for those costs.  No matter how many hours put in, no matter how burdensome the litigation, there would be no payment unless Plaintiffs prevailed, and received a money damages award and award of attorneys' fees.  Moreover, this litigation involved many significantly complex issues, which exacerbated the risk of non-recovery.

-21-

Pursuant to the Settlement, Defendants will pay a total of $150,000.00. This amount consists of damages and liquidated damages to the Class Members, the Collective Members, and the Manager Plaintiffs, service awards to the Named Plaintiffs, attorneys' fees and costs, and up to $5,000.00 in Plaintiff's costs for the administration of the settlement.  Plaintiffs' counsel seeks $50,000.00 in attorneys' fees, which represents 1/3 of the overall settlement rather than the 40% provided in the settlement agreement.  The reduction was justified by the uncertainty of further litigation, and Plaintiffs' counsel has since continued to devote time and resources to this matter since reaching a resolution. The settlement to the Plaintiffs, and the allocation to Plaintiffs' counsel of attorneys' fees and costs, is fair and reasonable.  The parties request that this Court approve the settlement agreement.

## VI.    CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, the Parties respectfully request that the Court enter Proposed Order submitted herewith and:

-22-

(1)     Certify the proposed Settlement Class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process;

(2)     Appoint Named Plaintiffs Valerie Valle and Keely Siegel as Class Representatives for the Class Members;

(3)     For settlement purposes, appoint Clifford P. Bendau, II and Christopher J. Bendau of Bendau & Bendau PLLC as Class Counsel for the Proposed Settlement Class;

(4)     Approve the Parties' attached proposed notice of settlement and proposed notice procedure;

(5)     Set a date by which the Parties must file a motion for final settlement approval and petition for award of attorneys' fees and costs;

(6)     Schedule the fairness hearing; and

(7)     Approve the settlement agreement pursuant to 29 U.S.C. § 216(b) and authorize the issuance of the attached settlement notice to the putative Collective Members.

RESPECTFULLY SUBMITTED this 26th day of July 2021.

BENDAU & BENDAU PLLC

/s/ *Christopher J. Bendau*
Clifford P. Bendau, II
Christopher J. Bendau
Attorneys for Plaintiffs

SPENCER FANE LLP

/s/
Helen R. Holden
Attorney for Defendants

-23-

PH 1022305.1

1

2

**CERTIFICATE OF SERVICE**

3

4        I hereby certify that on the 26th Day of July, 2021, a copy of the foregoing was

5     transmitted electronically to the CM/ECF filing system for filing and transmittal along with

      copies transmitted to all counsel of record via the CM/ECF system.

6

7     /s/ Christopher J. Bendau

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PH 1022305.1