# Exhibit A

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and between Valerie Valle and Keely Siegel ("Named Plaintiff"), on behalf of herself and the Settlement Class (as herein defined), on the one hand, and Defendants B & R Lyles Enterprises LLC, BB Peoria LLC, BB Phoenix LLC, BB Tempe LLC, Mesa BB LLC, Peoria Beans LLC, and Benjamin Lyles and Regina Lyles, a married couple, ("Defendants"), on the other.

## RECITALS

WHEREAS, a Complaint was filed against Defendants in the United States District Court for the District of Arizona, Civil Action No. 2:20-cv-01513-DWL ("the "Litigation") and subsequently amended;

WHEREAS, the Litigation asserts collective action claims under the Fair Labor Standards Act ("FLSA"), and class claims under Arizona Minimum Wage Act, alleging that Defendants failed to properly comply with minimum wage and overtime obligations, for baristas and certain manager employees; and

WHEREAS, the Litigation seeks compensatory damages, liquidated damages, interest, and attorneys' fees and costs on behalf of current and former barista employees who have been employed by Defendants during relevant times; and

WHEREAS, Defendants deny and continue to deny the allegations in the Litigation and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding liability, wrongdoing, or damages, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continuing the Litigation; and

WHEREAS, Named Plaintiffs and Plaintiffs' Counsel have vigorously litigated this matter, have analyzed payroll, expense reimbursement data produced by Defendants, and have interviewed numerous baristas previously employed by Defendants regarding the Plaintiffs' claims; and

WHEREAS, Plaintiffs' Counsel have thoroughly analyzed and evaluated the merits of the claims against Defendants, the merits of Defendants' responses to those claims, Defendants' potential defenses, the potential damages to be recovered at a trial, and the impact of this Agreement on the Settlement Class Members; and

WHEREAS, based on their analysis and evaluation of relevant factors, and recognizing the risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in no recovery whatsoever for the Settlement Class Members, might result in a recovery less favorable to the Settlement Class Members, might result in a recovery more favorable to the Settlement Class Members, and the likelihood that any recovery for any portion of the damages claimed would not occur for several years, counsel for the Parties are satisfied that the terms and conditions of the Agreement are fair, reasonable, and adequate, and Plaintiffs' Counsel and the

Named Plaintiffs are satisfied that this Agreement is in the best interest of the Settlement Class Members.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions, subject to Court approval of the settlement and dismissal of the Litigation with prejudice:

## 1. DEFINITIONS

The terms set forth herein shall have the meanings ascribed to them below.

"**Complaint(s)**" means the most recent Complaint on file in the Litigation, including the First Amended Complaint that was filed on October 13, 2020.

"**Claims Administrator**" means Optime Administration.

"**Claim Form and Consent to Join**" shall mean the form of opt-in notice attached hereto as Exhibit A, at p. 6.

"**Class Members**" means those certain 139 baristas who worked as tipped employees of Defendants between July 30, 2017 and July 30, 2020 (the "**Class Period**"), and who are identified by name on an Excel spreadsheet to be provided to Plaintiffs' Counsel not later than 7 days after signing this Agreement, including, without limitation, those who have previously filed consents opting-in to this matter, as identified in Exhibit B hereto (the "**Current Opt-In Plaintiffs**").

"**Collective Members**" means those Class Members who have previously submitted Opt-In Notices in the Litigation who are listed on Exhibit B hereto, plus those additional Class Members who timely submit a Claim Form and Consent to Join to the Claims Administrator.

"**Defendants**" means B & R Lyles Enterprises LLC, BB Peoria LLC, BB Phoenix LLC, BB Tempe LLC, Mesa BB LLC, Peoria Beans LLC, and Benjamin Lyles and Regina Lyles, a married couple.

"**Defendants' Counsel**" means Spencer Fane LLP.

"**Effective Date**" means the Effective Date of this Agreement, which shall be 31 days after the Court's final approval of the settlement set forth in this Agreement.

"**Litigation**" means *Valerie Valle et al. v. B & R Lyles Enterprises, LLC dba Bikini Beans Coffee*, pending in the United States District Court for the District of Arizona, Civil Action No. 2:20-cv-01513-DWL.

"**Manager Plaintiffs**" means Valerie Valle, Alicia Gates, Soraya Sanchez, and Allyson Barela.

"**Named Plaintiffs**" means Valerie Valle and Keely Siegel, includes any and all of their representatives, heirs, administrators, executors, beneficiaries, agents, attorneys, and assigns, as applicable and without limitation.

"**Parties**" means the Named Plaintiff, the Class Members, and Defendants.

"**Plaintiffs' Counsel**" means Bendau & Bendau PLLC.

"**Qualified Settlement Fund**" or "**QSF**" means the account established by the Claims Administrator into which Defendants will deposit that portion of the Settlement Amount necessary to pay: (1) Court-approved attorneys' fees and costs for Plaintiffs' Counsel; (2) Court-approved Service Awards to Named Plaintiffs as specified herein; and (3) the claims of all Settlement Class Members. The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement, the Court's Orders for Preliminary Approval and Final Approval and customary agreement entered into by the Parties through their counsel.

"**Released Parties**" means B & R Lyles Enterprises LLC, BB Peoria LLC, BB Phoenix LLC, BB Tempe LLC, Mesa BB LLC, Peoria Beans LLC, and Benjamin Lyles and Regina Lyles, and any related entities, along with all respective owners, members, stockholders, or franchisors, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, insurance carriers and all persons acting by, through, under or in concert with them.

"**Notice**" or "Settlement Notice" means the form of notice to be sent following the Court's entry of an Order granting preliminary approval of the Settlement, a form of which is attached as Exhibit A, at pp. 1-5 hereto.

"**Settlement**" means the settlement of the Litigation pursuant to the terms of this Agreement.

"**Settlement Amount**" means the payments required of Defendants under this Agreement in the gross amount of $150,000.00, which shall be deposited into the QSF and distributed per the terms of this Agreement, subject to approval by the Court.

## 2.   APPROVAL AND CLASS NOTICE

**2.1   Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to achieve a full and final settlement in the Litigation.

**2.2   Retention and Payment of Claims Administrator.**  The Claims Administrator will be responsible for locating Class Members through commercially reasonable efforts. Prior to sending notices, the Claims Administrator will run all names and addresses through the National Change of Address Database to update any addresses. The Claims Administrator will then perform a skip trace for all returned notices to find an updated address. The Claims Administrator will also be responsible for mailing (and re-mailing, if necessary) of Notices to Settlement Class Members in accordance with the Court's Preliminary Approval Order; responding to inquiries from Settlement Class Members; resolving disputes relating to individual settlement share amounts of Settlement Class Members not resolved by Counsel; reporting on the state of the settlement to the Parties; distributing the QSF to Plaintiff's Counsel and Settlement Class Members; calculating the Settlement Checks in accordance with the Court's Final Approval Order; calculating the Named Plaintiffs' and Class Members' share of payroll taxes and mandatory withholdings, withholding Named Plaintiffs' and Settlement Class Members' share of taxes; remitting all such tax payments (*i.e.,* Named Plaintiff's and Class Members' share of payroll taxes and withholdings to the appropriate taxing authorities); preparing a declaration regarding its due diligence in the claims administration process; providing counsel with any information related to the

administration of the Settlement upon request; and performing such other duties as the Parties may jointly direct or as are specified herein.

(A)     Half of the fees and costs of the Claims Administrator shall be paid by Defendants separate from the QSF and not taken out of the Settlement Amount, up to the sum of $5000.

(B)     The Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to Settlement Class Members, the Settlement administration process, the substance and status of disputes (if any) raised by Settlement Class Members regarding the calculation of settlement amounts, and distribution of the Settlement Checks.

(C)     In the event of a dispute regarding an individual's settlement payment, the Claims Administrator shall promptly report the nature of the dispute to Plaintiffs' Counsel and Defendants' Counsel, who will confer in good faith with the Claims Administrator in an effort to resolve the dispute.  In the event that counsel are unable to reach agreement, the Claims Administrator shall decide the dispute, and its decision shall be final and binding on the Parties.

(D)     The Parties and Counsel agree to cooperate with the Claims Administrator and to: i) provide accurate information, to the extent reasonably available, necessary to calculate the individual Settlement Class Members' settlement payments; and ii) assist the Claims Administrator in locating Class Members.

(E)     The Claims Administrator shall calculate the additional amounts owed by Defendants for employer-side taxes and inform Defendants' Counsel of same. Defendants shall pay such amount, in addition the Settlement Amount, and Claims Administrator shall remit such amount to the appropriate taxing authorities on behalf of Defendants.

**2.3    Preliminary Certification of a Rule 23 Class and FLSA Collective for Settlement Purposes Only.**

(A)     For purposes of settlement only, the parties agree to the certification of a class pursuant to Rule 23, Fed. R. Civ. P., comprised of all Class Members who do not opt out of participating in the Settlement by submitting a Request for Exclusion.

(B)     Also for purposes of settlement only, the parties agree to the certification of a collective pursuant to the Fair Labor Standards Act under 29 U.S.C. § 216(b), comprised of the Current Opt In Plaintiffs, plus those additional Class Members who timely submit a Claim Form and Consent to Join to the Claims Administrator.

**2.4    Approval Motion.**

(A)     Plaintiff shall file an unopposed Motion for Preliminary Approval and Proposed Preliminary Approval Order within 7 days after execution of this Agreement.

(B)    If the Court denies the Preliminary Approval Motion, the Parties agree to work in good faith to jointly seek reconsideration of the ruling or attempt to renegotiate the Settlement and seek Court approval of a renegotiated settlement. Thereafter, if the Court denies the Preliminary Approval Motion, this Agreement shall be null and void and the Litigation will resume as if no settlement had been attempted. Defendants retain the right to contest whether the Litigation should be maintained as a class action and to contest the merits of the claims being asserted in the Litigation.

(C)    The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment of Dismissal.

**2.5    Notice.**

(A)    Within ten days of the Court's issuance of a Preliminary Approval Order, Defendants will provide the Claims Administrator, in electronic form, the following information for all Class Members: (1) name; (2) social security number; (3) last known address; (4) dates of employment; and (5) hours worked within the Class Period, broken out by year.

(B)    Within five days of the receipt of the information specified in Paragraph 2.5(A) for all Class Members from Defendants, the Claims Administrator will mail to Class Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class Action Lawsuit and Fairness Hearing. The Claims Administrator shall keep accurate records of the dates on which it sends Notices to all Class Members.

(C)    The Claims Administrator will take commercially reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the Post Office as undeliverable and shall attempt re-mailings as described in this Agreement.

**2.6    Motion for Judgment and Final Approval.**

Not later than 21 days after the end of the Notice Period (as defined below), Plaintiffs' Counsel will submit to Defendants' Counsel a draft Joint Motion for Judgment and Final Approval (the "Final Approval Motion"). Defendants' Counsel shall have seven days to review and make any revisions to the Final Approval Motion. Plaintiff shall file the Joint Motion for Final Approval and Proposed Final Approval Order at least 21 days before the Fairness Hearing.

**2.7    Entry of Judgment.** In the Final Approval Motion and at the Fairness Hearing, the Parties will request that the Court, among other things, (a) enter Judgment in accordance with this

Agreement, (b) approve the Settlement and Agreement as final, fair, reasonable, adequate, and binding on all Settlement Class Members, and (c) dismiss the Litigation with prejudice.

**2.8    Effect of Failure to Grant Final Approval.**  The Settlement and this Agreement are contingent upon the Court's approval of the Settlement and this Agreement.  In the event: (1) the Court fails to enter a Final Approval Order approving the Settlement; and (2) the Parties do not jointly agree to (a) seek reconsideration or appellate review of the decision denying entry of the Judgment, or (b) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement, then the Settlement and this Agreement will become null and void *ab initio*.  In the event the Settlement and this Agreement become null and void:

(A)    The Parties shall have no further rights or obligations under this Agreement or the Supplemental Settlement Agreements and the pleadings shall revert to *status quo ante* and Defendants shall maintain all rights and defenses including the right to contest certification.

(B)    The Litigation will proceed as if no settlement had been attempted.  In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

(C)    Notice will be provided to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made under the Agreement.  Such notice shall be mailed by the Claims Administrator via First-Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

(D)    This Agreement (including Exhibits) will not be used for any purpose in connection with the Litigation, any future litigation, or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint, except that the non-disclosure obligations in Section 5 below will remain in effect.

**3.    SETTLEMENT TERMS**

**3.1    Settlement Payments.**

(A)    Defendants agree to pay the Settlement Amount to fully and finally resolve and satisfy any and all claims by Named Plaintiffs and Class Members asserted in the Litigation, inclusive of all unpaid wages, overtime, penalties, fines, liquidated damages, interest, costs, taxes (excluding employer-side payroll taxes), court costs, attorneys' fees and costs, and service awards, in exchange for the Settlement Class Members' agreement to the releases contained below. Under no circumstances will Defendants be required to pay more than the gross total of $150,000.00 under the terms of this Agreement (excluding any employer-side payroll taxes and ½ the cost of settlement administration, to a maximum of $5000 for Defendants).  Said total payment amount shall be made and distributed as follows:

i.   By no later than 14 days after the Effective Date of the Agreement, Defendants shall deposit $150,000.000 into the QSF.

ii.  After deductions provided in Section 3.2 below, all remaining funds shall be distributed to the following:

(a)  The sum of $10,000.00 to the Manager Plaintiffs, paid in the following sums:

$3,000.00 to Valerie Valle;

$3,000.00 to Alicia Gates;

$3,000.00 to Soraya Sanchez; and

$1,000.00 to Allyson Barela.

(b)  The sum of $48,925.00 to Collective Members on a pro rata basis based on the hours worked in each year during the Class Period;

(c)  The sum of $27,800.00 ($200.00 each) to all Class Members who have not opted out of the Litigation by submitting a Request for Exclusion.

iii. Within 10 days after the Court's Final Approval Order approving the Settlement, Defendants' Counsel will provide the Claims Administrator via email any IRS documentation (e.g., Forms W-4 and/or W-9) necessary to process the settlement payments set forth herein.

iv.  Plaintiffs' Counsel and Defendants' Counsel shall work in good-faith to provide any additional information to the Claims Administrator as needed to ensure final distribution, including processing and sending:  (1) a check to Plaintiffs' Counsel for the total amount of Attorneys' Fees and Costs; (2) a check directly to each Class Member in the amount specified in the Distribution Spreadsheet identified herein; and (3) an additional check to Named Plaintiff for the Service Award, all as approved by the Court.

v.   If any payments are returned by the postal service as undeliverable, Claims Administrator will run all names and addresses through the National Change of Address Database to update any addresses.  Claims Administrator will then perform a skip trace for all returned notices to find an updated address.  If an updated address is found, a second mailing will be made.  It is the Parties' intention that the Claims Administrator make all reasonable efforts to identify and locate class members and distribute the settlement proceeds to the Class Members in accordance with the Distribution Spreadsheet.

vi.     After 180 days from the initial mailing, in the event that there are any stale checks attributable to any Class Member, those funds will be delivered to the *cy pres* recipient, The Arizona Justice Project.

(B)     Subject to Court approval, $3,000 shall be distributed to Named Plaintiff Valerie Valle, and $1,000 shall be distributed to Named Plaintiff Keely Siegel as Service Awards in recognition of, and in consideration for, the substantial assistance they rendered to Plaintiffs' Counsel and to the Litigation in pursuing the rights of all Class Members. The Administrator will deliver this payment c/o Plaintiffs' counsel within 21 days after the Effective Date.

(C)     Under this Settlement, Plaintiffs' counsel are entitled to attorneys' fees in the amount of $50,000.00, and Plaintiffs' counsel are entitled to costs in the amount of $4,275.00, plus up to an additional $5,000 in settlement administration costs. The Final Approval Motion shall seek approval for such fees and costs, and Defendants agree not to contest Plaintiffs' Counsel's fee and costs application.    The Administrator will deliver the fees and costs awarded by the Court as directed by Plaintiffs' counsel within 21 days after the Effective Date.

(D)     The costs and fees to the Claims Administrator shall be shared equally by Defendants and Plaintiffs, for costs and fees in administering the settlement.

**3.2     Nature of Payments / Taxation of Settlement Disbursements.**

(A)     The Parties agree that, for tax purposes, 50% of the funds distributed to Collective Members, and 66% of the funds distributed to Class Members, shall be treated as liquidated damages and, therefore, no taxes shall be withheld from such payments. The Claims Administrator may issue the Class Members an IRS Form 1099 for these payments as required by law.    The remaining percentage of the funds distributed to Collective members and Class Members shall be treated as back wages from which applicable taxes and withholdings will be deducted, with Defendants to pay the employer's share of taxes.    Claims Administrator will issue Settlement Class Members an IRS Form W-2 for these payments.

(B)     All payments made to Settlement Class Members in resolution of their claims in this Litigation will not be considered for purposes of calculating, or recalculating, benefits provided by Defendants under the terms or conditions of any benefits plan.

(C)     The Parties agree that, for tax purposes, the Service Award to the Named Plaintiffs under Section 3.1(B) above shall be treated as non-employee income and Claims Administrator shall issue Named Plaintiffs  IRS Forms 1099 in the amount of the Service Award.

(D)     Each Settlement Class Member shall be solely and exclusively responsible for their taxes, interest and penalties, if any, of any nature, owed with respect to any payment received by them under this Agreement and will indemnify and hold Defendants and Plaintiffs' Counsel harmless from and against any and all taxes, penalties, and

interest of any nature assessed as a result of a Settlement Class Member's failure to timely and properly pay their taxes.

4.      **RELEASE**

4.1     **Release of Claims by Settlement Class Members.**

(A)     All Settlement Class Members who do not exclude themselves from this Agreement irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim they may or might have against Defendants or any of the Released Parties (as defined herein) from all claims arising under the Arizona Minimum Wage Act, A.R.S. § 23-362 et seq., as alleged the Complaint, including without limitation, any claims or causes of action which accrued from July 30, 2017 through the date that preliminary approval of this agreement is granted. This includes, but is not limited to, any claims relating to the tip credit under A.R.S. § 23-363(C), any claims relating to alleged withholding of tips, any claims relating to withholding of wages, or any claims relating to register shortages, and/or any claims relating to uniform or other deductions from pay.  This release also includes, without limitation, any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest.

(B)     All Collective Members irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim they may or might have against Defendants or any of the Released Parties (as defined herein) from all wage and hour claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., as amended, as alleged in the Complaint, which accrued from and after July 30, 2017 through the date that preliminary approval of this agreement is granted. For the avoidance of doubt, if any Class Member does not submit a Claim Form and Consent, then that Class Member will not release any claims under the Fair Labor Standards Act.

4.2     **No Release of Claims Not Permitted by Law.** Notwithstanding the foregoing, the Class Members do not release or waive any claims that may not be released or waived unless otherwise allowed by state and/or federal law.

4.3     **Release of Claims by Named Plaintiff Valerie Valle.** For and in consideration of the required acts and promises set forth in the text of this Agreement, Valerie Valle, for herself and her heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharge Defendants and Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date, which has or might have as a result of, or in any way connected with Valle's employment or separation of employment with Defendants, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The

DocuSign Envelope ID: 6FDD94BB-9549-4079-82CD-26675F85235FC

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and State of Arizona, Arizona Civil Rights Act, the Arizona Minimum Wage Act or other Arizona wage statutes, the Arizona Employment Protection Act, and other statutes and the common law of the state of Arizona, or federal laws including but not limited to those relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.*), severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, accrued to date, which Valle has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law.  By signing this Agreement, Valle promises, covenants and agrees, to the fullest extent permitted by law, that she will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement.  Valle acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which she is not now aware and of which she may only become aware at some later date.  Nevertheless, Valle fully and freely intends to and does, by executing this Agreement, release any such claims.  Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

4.4    **Release of Claims by Named Plaintiff Keely Siegel.** For and in consideration of the required acts and promises set forth in the text of this Agreement, Keely Siegel, for herself and her heirs, assigns, executors, administrators, agents, successors in interest, and legal representatives, hereby knowingly and voluntarily releases and forever discharge Defendants and Released Parties from any and all claims, demands, causes of action, complaints, rights, actions, remedies, suits, or charges, known or unknown, asserted or

PH 625394.6

DocuSign Envelope ID: 6FDD94BB-9549-4079-82CD-36E75F35235FC

unasserted, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, accrued to date, which has or might have as a result of, or in any way connected with Valle's employment or separation of employment with Defendants, including but not limited to claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Worker Adjustment and Retraining Notification Act of 1988, the National Labor Relations Act, the Constitutions of the United States and State of Arizona, Arizona Civil Rights Act, the Arizona Minimum Wage Act or other Arizona wage statutes, the Arizona Employment Protection Act, and other statutes and the common law of the state of Arizona, or federal laws including but not limited to those relating to discrimination, harassment, retaliation, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, any and all claims or rights under federal, state or local laws, regulations or ordinances relating to the payment of wages, bonuses, overtime, vacation pay, incentives and other compensation to employees (including under the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.*), severance pay claims, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, accrued to date, which Keely Siegel has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement, to the extent permitted by law. By signing this Agreement, Keely Siegel promises, covenants and agrees, to the fullest extent permitted by law, that she will never commence, prosecute or cause to be commenced or prosecuted, any action or other proceeding based upon any claims, demands, causes of actions, obligations, damages or liabilities which are released by this Agreement. Siegel acknowledges and agrees that, except as expressly limited in this release, this release releases and precludes any claims of which she is not now aware and of which she may only become aware at some later date. Nevertheless, Siegel fully and freely intends to and does, by executing this Agreement, release any such claims. Notwithstanding the above, nothing in this release is intended to release or waive rights to any claim or right which cannot be waived by law, including all claims arising after the effective date of this Agreement; the right to file a charge with or participate in an investigation conducted by an administrative agency; the right to enforce this Agreement; any right to COBRA benefits, unemployment insurance benefits, or vested retirement benefits; nor any existing rights of defense and indemnity or liability insurance coverage.

4.5  **Release of Fees and Costs.** Named Plaintiffs, on behalf of the Settlement Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have against Defendants or the Released Parties for attorneys' fees, costs, or expenses associated with this Litigation, including but not limited to those attorneys' fees, costs, or expenses associated with Plaintiffs' Counsel's representation of the Plaintiffs or the Settlement Class Members in this Litigation. Plaintiffs' Counsel further understand and agree that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Plaintiffs' Counsel's representation of Plaintiffs or the Settlement Class Members in this Litigation.

4.6  **No Assignment.** The Named Plaintiffs, on behalf of themselves and the Settlement Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation.

4.7  **Non-Admission of Liability.** By entering into this Agreement, Defendants and the Released Parties in no way admit any violation of law or any liability whatsoever to the Named Plaintiffs or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Settlement of the Litigation and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c), are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and any exhibit hereto are settlement documents and shall be inadmissible in any proceeding for any reason, except a proceeding to enforce the terms of this Agreement.

4.8  **Stay Pending Approval.** The Parties agree to continue the current stay of the proceedings in the Litigation, pending final approval of the Settlement.

4.9  **Opt-Outs/Exclusions from the Settlement.**

(A)  Class Members who wish to opt out from the Settlement and this Agreement must submit a timely written notification of intent to opt out of the Settlement ("Notice") no later than 60 days from the initial mailing of the Notice ("Notice Period"). To be valid, the Opt-Out Notice must contain the following statement or a similar statement.

> I wish to opt out of the settlement of the case *Valerie Valle et al. v. B & R Lyles Enterprises, LLC dba Bikini Beans Coffee*. I understand

that by requesting to opt out from the Settlement, I will receive no money from the settlement fund created in accordance with the settlement of that case.  I understand that if I opt out from the class monetary settlement, I may bring a separate action.

(B)    A Class Member who submits a Request for Exclusion is not eligible to recover a share of the Settlement.

**4.10**    **Objections.**

(A)    Class Members who wish to object to this Agreement must send a written objection to the Claims Administrator as provided in the Notice no later than 60 days from the initial mailing of the Notice.  Objections will be deemed timely returned if they are postmarked on or before the 60th day after the initial mailing of the Notice.

(B)    The objection must include the objecting party's full name, address, telephone number, and email address and must identify any counsel involved.  The objection will state the objection to the Settlement, the basis for the objection, and all documents that support the objection.  Class Members who fail to make objections in the manner specified above will be deemed to have waived their ability to object to the Agreement and, therefore, will be foreclosed from making any objection (whether by subsequent objection, intervention, appeal, or otherwise) to the Agreement.

**5.**    **NON-DISPARAGEMENT**

**5.1**    Named Plaintiffs and the Current Opt In Plaintiffs agree and covenant that they will not at any time make, publish or communicate to any person or entity or in any public forum (including on any social media platform) any defamatory or disparaging remarks, comments or statements concerning the Defendants, or their businesses, or any of their employees. Plaintiffs' Counsel expressly agrees that they will individually inform all Current Opt In Plaintiffs of the existence of this provision.

**5.2**    Nothing in this Agreement shall prohibit Counsel for the Parties from disclosing information concerning this Agreement, to their employees, or their agents to effectuate the terms of this Agreement.  Moreover, nothing in this Agreement shall prohibit Defendants from disclosing information concerning this Agreement to their employees or agents to the extent necessary to effectuate the terms of this Agreement or to other individuals who otherwise have a need to know the terms of this Agreement.  The Parties may also disclose information concerning this Agreement to their respective counsel and tax, audit, and legal advisors.

**5.3**    Nothing in this Agreement shall prevent Defendants or Defendants' Counsel from making any necessary, appropriate, or required disclosures to Defendants' regulators, auditors, bankers, and the like, or from complying with its obligations under the law.

DocuSign Envelope ID: 6FDD94BB-9549-4079-82CD-26C7F535235FC

5.4     Nothing herein shall be construed to impede on or interfere with Plaintiffs' Counsel's ability to communicate with Class Members after the Court grants Preliminary Approval of the Settlement.

6.     **MISCELLANEOUS**

6.1     **Cooperation Between and Among the Parties; Further Acts.** The Parties shall reasonably cooperate with each other in a timely manner and shall take all necessary steps to effectuate this Agreement.

6.2     **Entire Agreement.** This Agreement including any exhibits constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

6.3     **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length with the assistance of an experienced mediator, Tod Schleier, Esq. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied on by the Parties in entering into this Agreement. The Parties have been represented and assisted by counsel through the negotiation and drafting of this Agreement.

6.4     **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Agreement.

6.5     **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.  With the exception of the Release provisions contained herein, if any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable under present or future laws, any such provision(s) will be interpreted and revised only to the extent necessary to bring it within the requirements of the law and enforceable.  In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a party of the Agreement.  The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance.  In the event that any of the Release provisions are held to be illegal, invalid, or unenforceable under present or future laws, Defendants reserve the right to void the Agreement.

6.6     **Costs.** Except as otherwise provided herein, all Parties shall bear their own costs, expenses and attorneys' fees relating to this Agreement and the Litigation.

6.7     **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement shall be valid or binding unless set forth in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment. A failure by any Party to insist on the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance

PH 625394.6

DocuSign Envelope ID: 6FDD94BB-9549-4079-82CD-26C7EF35235FC

of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist on the specific performance of any and all of the provisions of this Agreement.

**6.8    Counterparts.** Named Plaintiffs and Defendants may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Named Plaintiffs and Defendants signed the same instrument.

**6.9    Signatures, Transmittals, Electronic Copies and Facsimiles.** Once a Party has executed this Agreement, that signature page may be transmitted by email or facsimile to counsel for the other Party. Any signature, including electronic signatures, made and transmitted by email or facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding on the Party whose counsel transmits the signature page by email or facsimile.

**6.10   Choice of Law.** This agreement shall be governed by and construed under the laws of the State of Arizona.

DATED: ___7/26/2021___    B & R Lyles Enterprises, LLC

Signature: _Benjamin Lyles_____

By: ___Benjamin Lyles_____

Its: ___Member_____

DATED: ___7/26/2021___    BB Peoria LLC

Signature: _Benjamin Lyles_____

By: ___Benjamin Lyles_____

Its: ___President_____

DATED: ___7/26/2021___    BB Phoenix LLC

Signature: _Benjamin Lyles_____

By: ___Benjamin Lyles_____

Its: ___President_____

PH 625394.6

DATED: 7/26/2021 _____

BB Tempe LLC

Signature: _____

Benjamin Lyles

By: _____

President

Its: _____

DATED: ___7/26/2021___

Mesa BB LLC

Signature: Benjamin Lyles
511CGB158BE7403...

By: Benjamin Lyles

Its: President


DATED: ___7/26/2021___

Peoria Beans LLC

Signature: Benjamin Lyles
511CGB168BE7403...

By: Benjamin Lyles

Its: Manager


DATED: ___7/26/2021___

Benjamin Lyles

By: Benjamin Lyles
511CCB158BE7403...
Benjamin Lyles


DATED: ___7/26/2021___

Regina Lyles

By: Regina Lyles
B569785E9BCF497...
Regina Lyles

PH 625394.6

DATED: _7/26/2021_

Plaintiff Valerie Valle, individually and on behalf of the Class Members

By: _____

Valerie Valle

DATED: _____

Plaintiff Keely Siegel, individually and on behalf of the Class Members

By: _____

Keely Siegel

DATED: _____          Plaintiff Valerie Valle, individually and on behalf of the
                                   Class Members


                                   By: _____
                                       Valerie Valle

DATED: _7/26/2021_____          Plaintiff Keely Siegel, individually and on behalf of the
                                   Class Members

                                   By: _____
                                       Keely Siegel

DocuSign Envelope ID: 39F40891-B268-407D-99E9-FFB8C10A2414

# <u>Exhibit A</u>

## <u>NOTICE OF CLASS ACTION SETTLEMENT</u>

**If you were employed by Bikini Beans as a barista at any time between July 30, 2017 and July 30, 2020 a Class Action Settlement May Affect Your Legal Rights**

*A Court Authorized this Notice. This is not a solicitation from a lawyer.*
*You Have Not Been Sued.*

- Baristas and managers who worked at Bikini Beans Coffee asserted collective action claims under the Fair Labor Standards Act ("FLSA"), and class claims under Arizona Minimum Wage Act ("AMWA"), alleging that Bikini Beans failed to properly comply with minimum wage and overtime obligations. The claims were brought against multiple parties, including B & R Lyles Enterprises LLC, BB Peoria LLC, BB Phoenix LLC, BB Tempe LLC, Mesa BB LLC, Peoria Beans LLC, and Benjamin Lyles and Regina Lyles, all of whom are referred to in this Notice as "Bikini Beans."
- Bikini Beans denies these claims and contends that its employees have been properly compensated at all times.
- The Parties have reached a Settlement that resolves the Plaintiffs' claims, and the Court has granted preliminary approval of the Parties' Settlement Agreement. You are receiving this paperwork because you may be entitled to receive compensation under the Settlement Agreement, and because you have rights to exclude yourself from the Settlement if you choose to do so, and/or object to the Settlement if you choose to do so.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **SUBMIT A CLAIM FORM** | **Want to join the lawsuit and receive a *pro rata* payment.** **If you sign and submit the attached Claim Form on or before [insert date 60 days following notice**], you will receive your *pro rata* share of the settlement funds, and you will be subject to the release of claims described herein. |
| **DO NOTHING** | **Want to stay in this lawsuit and receive a minimum payment.** By doing nothing, you will still receive a minimum payment as a result of the parties' settlement and you will be subject to the release of claims described. |
| **ASK TO BE EXCLUDED** | **Want to get out of this lawsuit. Get no benefits from it.** If you ask to be excluded, you will not be entitled to receive any money from the Settlement. But, you would keep any rights to sue Bikini Beans. |
| **OBJECT TO THE SETTLEMENT** | **Want to file an objection to Settlement. Explain to the Court why you believe the Settlement is inappropriate.** You may file an objection to the Settlement explaining any reason why you believe the Court |

DocuSign Envelope ID: 39F40891-B268-407D-99E9-FFB8C10A2414

|  | should not approve the Settlement. If you do not ask to be excluded and only file an objection to the Settlement, you will be bound by the terms of the Settlement if the Court overrules your objection. |
|---|---|

- Your options are explained in this notice.  If you want to be excluded from or object to this Settlement, you must act as explained below before **[60 Days after Mailing of Notice]**.

- **You should read this Notice carefully, as it contains important information.**

## BASIC INFORMATION

### 1. Why did I get this Notice?

Bikini Beans' records show that you are either a current or former barista who was employed from July 30, 2017 to July 30, 2020, and who has not previously joined this matter as a Plaintiff.  If that is correct, then you are currently a member of the class in this lawsuit, unless you ask to be excluded.  This notice explains that the Court has allowed, or "certified," a class and collective action lawsuit that may affect you, and has preliminarily approved the Parties' class action Settlement.  You have legal rights and options that you may exercise as explained in this Notice.

### 2. What is this Lawsuit about?

This lawsuit is about whether Bikini Beans' pay practices violated state and federal wage and hour laws at any point from July 30, 2017 to [date that preliminary approval of Settlement agreement is granted] (the "Class Period"). Specifically, the lawsuit alleges that Bikini Beans improperly deducted from employees' pay for uniforms and from their final paychecks, and the Bikini Beans did not comply with the provisions of the FLSA and AMWA regarding compliance with tip credit rules (the "Class Claims").  Bikini Beans denies these allegations and asserts that at all times its employees were paid at least minimum wage and that Bikini Beans fully complied with all obligations regarding payment of its employees, including with respect to the tip credit. The Court has not decided whether Bikini Beans complied with the law or not. However, the Court has granted preliminary approval to the Parties' Settlement of the Class Claims.

### 3. What are the Monetary Terms of the Parties' Settlement?

Bikini Beans has agreed to pay $150,000 to resolve the Class Claims as described in paragraph 2 above less attorneys' fees and costs and service payments ("the Class Claim Settlement Amount").  The Class Claim Settlement Amount represents the approximate amount of compensation that the Plaintiffs claim as damages based upon the allegations of and information exchanged in the context of the Litigation.

### 4. How much will I receive?

If you file a claim form on or before [insert date 60 days following notice], you will receive approximately [INSERT SPECIFIC AMOUNT PER PERSON] less ordinary payroll tax withholdings.

## 5. Who are the Class's Attorneys and how will they be paid?

The Court has appointed the Plaintiffs' attorneys, Bendau & Bendau PLLC to represent the Class ("Class Counsel"). Class Counsel will ask the Court to award them fees and costs related to the prosecution of this case in a total amount not to exceed $59,275.40. If approved, this amount will be paid by from the Class Claim Settlement Amount.

## YOUR RIGHTS AND OPTIONS

You have to decide now whether to remain in the case as a member of the class or be excluded.

## 6. What happens if I decide to submit a claim or do nothing at all?

Whether you timely submit a claim or do nothing at all, you will receive money from this Settlement.

If you want to receive a larger share of the settlement, you must submit a signed copy of the attached Claim Form to the Claims Administrator at the address or below on or before [60 days following notice].

If the Court grants Final Approval of the Settlement, and you timely submit a claim form, you will receive a check in the mail equal to your proportionate share of the Class Claim Settlement Amount, as described above. If you do nothing, you will receive a minimum payment.

If you do not exclude you yourself from the settlement, you will be subject to the following release, regardless of whether you submit a claim or not:

### RELEASE OF CLAIMS:

I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Bikini Beans or any of the Released Parties (as defined in the Settlement Agreement and above) from all claims arising under the Arizona Minimum Wage Act, A.R.S. § 23-362 et seq., as alleged the Complaint, including without limitation, any claims or causes of action which accrued from July 30, 2017 through the date that preliminary approval of this agreement is granted. This includes, but is not limited to, any claims relating to the tip credit under A.R.S. § 23-363(C), any claims relating to alleged withholding of tips, any claims relating to withholding of wages, or any claims relating to register shortages, and/or any claims relating to uniform or other deductions from pay. This release also includes, without limitation, any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest.

DocuSign Envelope ID: 39F40891-B268-407D-99E9-FEB8C10A2414

If you submit a claim form, you will be subject to the above release, and also the release below:

**RELEASE OF CLAIMS:**

I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Bikini Beans or any of the Released Parties (as defined in the Settlement Agreement and above) from all wage and hour claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., as amended, as alleged in the First Amended Complaint, which accrued from and after July 30, 2017 through the date that preliminary approval of this agreement is granted.

## 7. How can I be excluded from the Settlement?

If you do not wish to participate in, and receive money from this Settlement, and/or would like to pursue your own, individual claim against Bikini Beans, you can elect to exclude yourself from the Class by filing an opt-out statement postmarked no later than [60 days from Mailing of Notice]. If you opt-out, you will not receive any money from this Settlement, you will not be legally bound by the any of the terms of the Settlement, and you may sue Bikini Beans on your own.  If you file your own lawsuit against Bikini Beans after you exclude yourself, you will have to hire and pay your own lawyer (if you decide to retain one), and you will have to prove your claims.

To be valid, a Class Member must submit a signed and dated written statement with your telephone number and email address to the Claims Administrator stating the following: "I wish to opt out of the settlement of the case *Valerie Valle et al. v. B & R Lyles Enterprises, LLC dba Bikini Beans Coffee*.  I understand that by requesting to opt out from the Settlement, I will receive no money from the settlement fund created in accordance with the settlement of that case.  I understand that if I opt out from the class monetary settlement, I may bring a separate action."

Again, a Class Member who submits an opt-out statement is not eligible to recover a share of the Settlement.

## 8.  How do I object to the Settlement?

If you believe the proposed Settlement is unfair for some reason, you have the right to submit an objection in writing that explains the basis for your objection. To object to the Settlement, you must submit a written statement explaining the reasons for your objection by [60 days after mailing of notice].  Be sure to include your name, address, telephone number, and email address, and sign the statement. If you have any documents you wish to submit in support of your objection, you must include them with your statement. You must mail your Objection, postmarked by [60 Days after Mailing of Notice], to:

**Optime Administration**
P.O. Box 3206
Brockton, MA 02304
**Phone: (844) 625-7313**
Fax: (781) 287-0381

4

DocuSign Envelope ID: 39F40891-B268-407D-99E9-FEB8C19A2414

.

The Court will consider your objection at the Final Approval hearing. If you do not ask to be excluded from the Settlement and the Court overrules your objection, you will be bound by all of the terms of the Settlement and will receive your proportionate share of the Class Claim Settlement Amount.

## GETTING MORE INFORMATION

**9. Are more details available?**

If you want more detailed information, you may write, call, or email:

**Optime Administration**
P.O. Box 3206
Brockton, MA 02304
**Phone: (844) 625-7313**
Fax: (781) 287-0381

**10.  Where and When Will the Court Approve the Settlement?**

The Court will determine whether to approve this Settlement. In order to do so, the Court will conduct a Settlement Fairness Hearing on _____ at _____ at the United States District Court for the District of Arizona. Although you may attend this hearing, you do *not* need to attend this hearing in order to participate in the Settlement. At the hearing, the Court will determine:

  (a)  Whether the proposed settlement is fair, reasonable, and adequate;
  (b)  whether the lawsuit should be dismissed with prejudice;
  (c)  whether Class Counsel's request for an award of attorney's fees and expenses should be approved; and
  (d)  any other relief that the Court deems necessary.

The Court may approve the Settlement and/or any other related matter at or after the Settlement Fairness Hearing without further notice to Class Members.

**PLEASE DO NOT CALL OR WRITE THE JUDGE OR CLERK OF THE COURT FOR INFORMATION ABOUT THIS LAWSUIT.  DIRECT ALL INQUIRIES TO CLASS COUNSEL OR AN ATTORNEY OF YOUR CHOICE.**

*Pursuant to order of the United States District Court*
*For the District of Arizona*

PH 635276.1

*Valerie Valle et al. v. B & R Lyles Enterprises, LLC dba Bikini Beans Coffee,*
No. 2:20-cv-01513-DWL

## **CLAIM FORM**

I understand that I have consented to join in the case entitled *Valerie Valle et al. v. B & R Lyles Enterprises, LLC dba Bikini Beans Coff*e *et al.*, now pending in the United States District Court for the District of Arizona (the "Litigation"), and agree to be bound by the Settlement Agreement negotiated by Plaintiffs' Counsel in that case.

_____          _____
Signature                                                          Date


_____          _____
Printed Name                                                  Phone Number


_____
Last 4 Digits of SSN
(for identification purposes only)


_____
Current Address (if different than address to which notice was mailed)

6

PH 635276.1

# BENDAU & BENDAU PLLC

## Exhibit B

DocuSign Envelope ID: 39F40891-B268-407D-99E9-FFB8C10A2414

Valle, et al. v. B & R Lyles Enterprises, LLC., et al.,
No. 2:20-cv-01513-DWL

**Current Opt-In Plaintiffs**

1. Imani Allen
2. Allyson Barela
3. Grace Chavez
4. Morgan Dean
5. Angelica Delaola
6. Alex Fishkind
7. Alicia Gates
8. Sheila Gonzalez
9. Desiree Hernandez
10. Hannah Hunt
11. Alexis Masliah
12. Morgan Nichols
13. Alexis Ochoa
14. Rinka Randall
15. Samantha Ruiz
16. Taylor Salow
17. Soraya Sanchez
18. Lena Splees-Dimmock
19. Sommer Sucevich
20. Jenna Tornese
21. Tiffany Weed