**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (AZ Bar No. 030204)
Christopher J. Bendau (AZ Bar No. 032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
         chris@bendaulaw.com
*Attorneys for Plaintiffs*

**SPENCER FANE LLP**
Helen R. Holden (AZ Bar No. 013264)
2415 E. Camelback Rd, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5450
Fax: (602) 3335431
E-mail: hholden@spencerfane.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Valerie Valle**, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**B & R LYLES Enterprises, LLC d/b/a Bikini Beans,** et al,<br><br>    Defendants. | No. 2:20-CV-01513-DWL<br><br>**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT** |

Plaintiffs Valerie Valle and Keely Siegel, individually and on behalf of all others similarly situated ("Plaintiffs and Class Members") and Defendants B&R Lyles Enterprises, LLC, BB Peoria LLC, BB Phoenix, LLC, BB Tempe, LLC, Mesa BB, LLC, Peoria Beans, LLC, and Benjamin Lyles and Regina Lyles ("Defendants" or "Bikini Beans") (Collectively, "Parties") file this Joint Motion for Final Approval of Class Action and FLSA Collective Action Settlement. The Parties Respectfully move this Court to certify the Rule 23 Class identified herein for the purpose of settlement,

-1-

determine that the Settlement and Release Agreement ("Agreement") between the Parties is fair and reasonable, and approve the agreement between the parties.

## I. INTRODUCTION

On July 26, 2021, the Parties filed their motion for preliminary approval asking the Court to certify, for purposes of settlement only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), approve the form of the notice to be sent to the Class Members, and approve the timing and method of the notice dissemination. Doc. 45. The Court granted the Parties' motion for preliminary approval on July 29, 2021. Doc. 46. The Court scheduled the Final Approval Hearing to take place on December 14, 2021 at 10:00 a.m. The Parties now request that the Court issue an Order finally certifying the requested settlement class and collective and approving the Agreement.

## II. SUMMARY OF FACTS AND PROCEDURAL HISTORY

This collective/class action hybrid lawsuit was filed in the District of Arizona on July 30, 2020 by Plaintiffs Valerie Valle and Keely Siegel on behalf of themselves and all other baristas and managers employed by Defendants anytime between July 30, 2017 and July 30, 2020. Doc. 1. Plaintiffs filed their First Amended Complaint on October 13, 2020. Doc. 26. Plaintiffs alleged that Defendants failed to properly compensate them and the class and collective members minimum or overtime wages–specifically due to improper tip credit notice, improper withholding of tips, improper required reimbursements, improper deductions from paychecks, and improper off the clock work. Plaintiffs have alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201., et seq. to recover their unpaid minimum wage and overtime compensation and statutorily prescribed penalties. In addition to their claims under the FLSA, Plaintiffs further alleged state law claims for Plaintiffs and Class Members. Doc. 26. Defendants deny any liability to Plaintiffs and the putative Class or Collective Members for any

unpaid minimum wages or overtime wages and allege that Plaintiffs and the putative Class and Collective Members were fully and properly compensated under federal and state law.

Twenty-one individuals filed consent forms to join prior to receiving notice. The Parties sought, and were granted, a stay of the action while the parties discussed settlement and ultimately agreed to mediate the matter in good faith. Docs. 38, 40. The Parties initially mediated the matter with Tod Schleier on March 18, 2021, and then had a second mediation on April 26, 2021, where the Parties reached a settlement. Due to the small number of current and former managers of Bikini Beans, several of whom had already opted into the lawsuit, the Parties agreed that the settlement class would only consist of the 139 current and former baristas. The managers who had already opted into the lawsuit would be included in the settlement, but only for their individual claims, and no other managers would receive notice or be included in the settlement unless any such manager also worked as a barista for Bikini Beans. The Parties filed their notice of settlement on May 7, 2021. The Parties filed their Joint Motion for Preliminary Approval of Class Action and FLSA Collective Action Settlement on July 26, 2021, and the Court granted the Motion on July 29, 2021. Docs. 45-46. The Parties now seek final approval of the Agreement.

### III.   SUMMARY OF THE SETTLEMENT TERMS

The Parties have agreed to settle this matter for the total gross settlement amount of $150,000.00. Included in that amount is Class Counsel's attorneys' fees of $50,000.00, out of pocket costs of $4,275.00, up to $5,000.00 for Plaintiffs share of the settlement administration costs, $4,000.00 in service awards to the two named Plaintiffs, and $10,000.00 in settlement amounts to the four managers who opted into the lawsuit. As previously noted, Defendants will separately pay their share of the settlement administration costs, up to $5,000.00, and will separately pay the employer share of

payroll taxes. The remaining $76,725.00 consists of two settlement funds: (1) a Class settlement fund of $27,800.00, which will be paid out in equal payments of $200.00 to all class members who do not opt out; and (2) a Collective settlement fund of $48,925.00, which will be paid out on a pro-rata basis to all Collective members who opt-in to the lawsuit based on the number of hours worked. Unless otherwise stated in the agreement, fifty percent (50%) of the funds distributed to Collective Members, and 67% of the funds distributed to Class Members, shall be treated as liquidated damages and will not have taxes withheld from such payments. The remaining percentages of the funds distributed to Collective Members and Class Members will be treated as back wages and will accordingly be subject to W-2 reporting. Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount.[1]

### IV.     CLASS RESPONSE TO NOTICE OF SETTLEMENT

On August 13, 2021, Optime administration mailed the notice to the 139 class members. Ultimately, between pre-notice opt-ins and post-notice opt-ins, a total of 45 individuals, nearly one third of the class, opted in to the FLSA settlement. *See* Optime Administration Status Update 11/4/2021, attached hereto as "**Exhibit A**." Further, no class members have chosen to opt-out of the settlement and no objections have been received. *See Id*. The class notice advised Class Members that they could submit an exclusion and/or objection to this Court through October 11, 2021.

"Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward to be heard." *In re Online DVD-Rental Antitrust litigation*, 779 F.3d 934, 946 (9th Cir. 2015). The Court previously approved the form and content of the Parties' notice of settlement and notice procedure. Doc. 46. The notice informed the Class Members and Collective

---

[1] Employer portions of all such payroll taxes and withholdings will be paid separately by Defendants.

-4-

Members of the hybrid nature of the case and settlement, as well as advised the individuals of their estimated recovery amounts if they opted in to the FLSA settlement. The notice advised the Class Members and Collective Members that Class Counsel would receive attorneys' fees and costs out of the Settlement, the instructions for opting-out or filing an objection to the settlement, the instructions for opting-in to the Collective Action settlement, the identify and contact information for Class Counsel, and the date of the fairness hearing. *Id*.

As such, the Class Members and the Collective Members have had a full opportunity to opt-out, object, join the FLSA settlement, and have the opportunity to attend and participate in the fairness hearing. Accordingly, the Parties have established that adequate notice has been provided.

## V.     ARGUMENT AND AUTHORITIES

Courts recognize that there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). Parties represented by competent counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995). However, the court must first determine that the settlement reached was truly fair, and not tainted by conflicts of interest or biased negotiations. *See Id*. The Court may only approve a class-action settlement after holding a hearing and finding that it is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of

the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In the situation where a settlement has been reached prior to formal class certification, settlement approval requires a higher standard of fairness in order to ensure the settlement is not a result of collusion.  *Id*.

> **A.** **The *Hanlon* Factors**
>> **1.** **Strength of the Plaintiffs' Case**

Plaintiffs have asserted that Defendants failed to properly compensate them and the class and collective members minimum or overtime wages–specifically due to improper tip credit notice, improper withholding of tips, improper required reimbursements, improper deductions from paychecks, and improper off the clock work. Defendants have vigorously disputed the claims, asserting that at all times Plaintiffs and the class and collective members were paid properly.  While Plaintiffs maintain the strength of their claims, they recognize the possibility that a jury may disagree and that the amount of their potential recovery could be significantly reduced or denied altogether.

>> **2.** **Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The parties reached a settlement of this matter approximately 9 months after the filing of the case.  Bringing this case to a full resolution would have required multiple years of litigation, judicial resources, and vast hours of attorney time.  The Parties would have needed to brief motions for conditional certification and decertification, and conduct discovery on issues regarding class certification and brief the issue.  The Parties would have also been required to engage in extensive fact discovery, including written discovery and depositions, and brief dispositive motions on the claims and defenses at issue.  Settlement of this matter is in the best interests of the Parties and judicial economy.

PH 1092175.1

### 3. Risk of Maintaining Class Action Status Throughout the Trial

While the Parties agree that class certification is appropriate for settlement purposes, Plaintiffs recognize that Defendants would have opposed class certification had the case continued through litigation to trial. Establishing and maintaining a class while litigating a Rule 23 class action is difficult and complex, and "the Court may revisit its prior grant of certification at any time before final judgment." *Saliba v. KS Statebank Corporation*, 2021 WL 4775105, at *3 (D. Ariz. Oct. 13, 2021). In coming to this early resolution, the Parties avoided many legal and factual hurdles in attempting to certify or decertify a class during litigation.

### 4. Amount Offered in Settlement

The Agreement provides for a substantial recovery for the Plaintiffs and Class and Collective Members. The gross settlement amount is $150,000.00. "To determine if the amount offered in settlement is fair, '[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *In re Apollo Grp. Inc Sec. Litig.,* 2012 WL 1378677, at *2 (D. Ariz. Apr. 20, 2012). The Class Members will each receive $200.00 for their state law claims, and no Class Members filed opt-out notices during the notice period. Further, any individual who opted into the FLSA settlement will receive their pro rata share of the FLSA settlement based on the number of hours worked. A total of 45 individuals have opted in to the FLSA settlement, and the Collective Members will receive an average of approximately $1,087.22 for their FLSA claims. Although the Collective Members are projected to received larger settlement awards, each Class Member had the opportunity to recover under the FLSA settlement fund by timely returning their Claim Form. Accordingly, taken as a whole, these amounts are within the reasonable range of recovery and provide substantial compensation for Plaintiffs and the Collective and Class Members.

### 5. Extent of Discovery Completed and the Stage of the Proceedings

This case was filed on July 30, 2020 and since its filing, the Parties have

-7-

1 informally exchanged payroll, time clock, and other relevant and necessary documents to
2 allow counsel for the Parties to ascertain the potential range of recovery and negotiate in
3 good faith.  Moreover, the resolution of this case was reached after mediating with a
4 well-respected wage and hour mediator, Tod Schleier, and fully explored the strengths
5 and weaknesses of all claims and defenses.

### 6. Experience and Views of Counsel

The Parties are represented by experienced wage and hour attorneys who regularly litigate class and collective actions throughout the United States.  "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation. Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *In re Apollo Grp. Inc., Sec. Litig.*, 2012 WL 1378677, at *2.  Counsel for the Parties represent to this Court that the settlement reached herein constitutes an excellent result considering the facts at issue and the significant time and expense that would be incurred if a settlement was not reached.

### 7. Presence of a Governmental Participant

There is no government participant in this matter, so this factor is not applicable.

### 8. Reaction of the Class Members to the Proposed Settlement

The reaction of the Class Members to the Settlement Agreement supports approval. No Class Member elected to opt-out of this settlement, and, to date, no objections have been lodged with this Court.  See Optime Final Report, attached hereto as "**Exhibit A.**"  The lack of objections and exclusions strongly supports approval.  *See Saliba v. KS Statebank Corporation*, 2021 WL 4775105, at *4 (D. Ariz. Oct. 13, 2021).

All of the relevant *Hanlon* factors support that the settlement is fair and

-8-

reasonable, and the Court should grant the Parties' Motion for Final Approval.

### B. The Settlement was a Product of Arm's Length Negotiations and does not Contain any Indicia of Fraud or Collusion

"Before approving a class action settlement, the district court must reach a reasoned conclusion that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties and that the final settlement, taken as a whole, is fair, reasonable and adequate to all concerned parties." *Ficalora v. Lockheed California Co.*, 751 F.2d 995, 997 (9th Cir. 1985) (citing *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

This matter was resolved only after the Parties engaged in two private mediations. The parties in this matter were represented in the negotiations by counsel experienced in wage and hour litigation. Both mediations were conducted fairly and at arm's length with the assistance of Tod Schleier, a well-respected mediator experienced with both wage and hour disputes and class and collective action litigation. Both of these facts support that this settlement is fair. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill 2001) (citing that a settlement proposal reached after arms-length negotiation with experienced, informed counsel may be properly presumed fair and reasonable.); *see also Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio October 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Prior to engaging in the mediations, the Parties exchanged and reviewed documents and prepared mediation statements, along with supplemental statements, which were provided to Mr. Schleier to review in advance of the mediations. All parties involved believe that the settlement represents a fair and reasonable compromise of contested litigation reached through arms-length negotiations.

PH 1092175.1

### C. **Plaintiffs are Eligible for Service Awards and the Requested Awards are Reasonable.**

"The Ninth Circuit recognizes that named plaintiffs in class action litigation are eligible for reasonable incentive payments." *Saliba v. KS Statebank Corporation*, 2021 WL 4775105, at *7 (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)). Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Incentive awards are evaluated using factors such as the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *See Saliba*, at *7 (quoting *Statn v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Courts within this circuit typically find service awards of $5,000 to be presumptively reasonable. *See e.g. Jones v. Agilysys, Inc.*, 2014 WL 108420, at *3 (N.D. Cal. Jan 10, 2014); *see also e.g. Jacobs v. California State Auto Ass'n Innter-Ins. Bureau,* 2009 WL 3562871, at *5 (N.D. Cal Oct. 27, 2009); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015).

Here, both named Plaintiffs Valerie Valle and Keely Siegel provided extensive information to Class Counsel that allowed them to advocate for the class as a whole and reach a resolution that benefitted the Class Members. Plaintiff Valle regularly made herself available to Plaintiffs' counsel to answer questions and discuss the case. She also acted as a disseminator of information to the other opt-in class members. Finally, Plaintiff Valle attended and participated in both mediations where this case ultimately was resolved. Plaintiff Keely Siegel was also instrumental in providing information about the claims, making herself available to answer questions and discuss the case, and disseminating information to the opt-in members. "Incentive awards are particularly

-10-

1  appropriate in wage-and-hour actions where plaintiffs undertake a significant
2  'reputational risk' by bringing suit against their former employers." *Howard v. Web.com*
3  *Group Incorporated*, 2020 WL 10223299, at *4 (D. Ariz. September 18, 2020).
4  　　　　The requested awards, $3,000.00 for Plaintiff Valle and $1,000.00 for Plaintiff
5  Siegel, represent approximately 2.5% of the overall settlement amount and are well
6  within the range of awards courts in this Circuit find presumptively reasonable.  Class
7  Counsel represents that the requested amount is reasonable based on the benefit achieved
8  for the Class, the substantial value added by the Named Plaintiffs, the effort expended by
9  the Named Plaintiffs, and the reputation risk taken on by the Named Plaintiffs.  Plaintiffs
10 therefore request that the Court approve the requested service awards.

11 　　　　**D.**　　**Class Certification is Appropriate**
12 　　　　As detailed in the Parties' Joint Motion for Preliminary Approval of Class Action
13 and FLSA Collective Action Settlement (Doc. 45), certification of a class action for
14 settlement purposes is appropriate.  The Parties hereby incorporate those arguments
15 herein.

16 　　　　**E.**　　**Class Administration Costs are Reasonable**
17 　　　　The Parties engaged Optime Administration to administer the terms of the
18 Settlement Agreement.  Their work so far has included sending out the settlement notice,
19 researching addresses for returned notices, resending returned notices, receiving claim
20 forms, opt-out requests, and any objections.  Additionally, Optime Administration will be
21 calculating the Collective Members' pro rata share of the settlement funds, calculating
22 necessary withholdings, managing the settlement fund, distributing payments following
23 the final approval of the settlement, and providing any unclaimed funds to the cy pres
24 recipient, The Arizona Justice Project. The Parties have agreed to split the cost of
25 settlement administration, up to $5,000 each.  Optime Administration has estimated a
26 cost of $3,955.00 for administering the settlement.  Plaintiffs seek approval of Plaintiffs'
27

portion of the settlement administration costs, up to $5,000.00, to be paid to Optime Administration from the settlement fund.  Class counsel represents that the requested amount is reasonable and commensurate with the costs associated with administering a complex Class Action and FLSA Collective Action settlement, such as this one.

## VI.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter the Proposed Order submitted herewith granting this Joint Motion for Final Approval of Class Action Settlement and FLSA Collective Action and determining the proposed Agreement is fair, adequate, and reasonable.

RESPECTFULLY SUBMITTED this 16th day of November 2021.

BENDAU & BENDAU PLLC

/s/ *Christopher J. Bendau*
Clifford P. Bendau, II
Christopher J. Bendau
Attorneys for Plaintiffs

SPENCER FANE LLP

/s/ *Helen R. Holden (with permission)*
Helen R. Holden
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th Day of November, 2021, a copy of the foregoing was transmitted electronically to the CM/ECF filing system for filing and transmittal along with copies transmitted to all counsel of record via the CM/ECF system.

/s/ *Christopher J. Bendau*

PH 1092175.1